IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

**RUCHITA DAVE,**

    *Plaintiff*,

v.

**MAULESH K RAVAL,** *et al.*,

    *Defendants*.

Civil No.: 1:24-cv-02616-JRR

**MEMORANDUM OPINION**

Pending before the court is Defendants' Maulesh K. Raval and Rinaben J. Raval's Motions to Dismiss (ECF Nos. 12, 14.) The court has reviewed all papers; no hearing is necessary. Local Rule 105.6 (D. Md. 2025).

**I.**    **BACKGROUND**[1]

Plaintiff, an Indian citizen, immigrated to the United States in August 2007. (ECF No. 13 ¶¶ 1–2.) At the time, she was 26 years old. *Id*. ¶ 3. Plaintiff received a student visa and was accepted to the University of Alabama. *Id*. ¶¶ 19, 21. Upon arrival in the United States, she lived with her then-husband's sister, Defendant Rinaben Raval and Ms. Raval's husband, Defendant Maulesh Raval. *Id*. ¶ 4. Soon after arriving to the United States, Plaintiff gave birth to a son. *Id*. ¶ 5. At Defendants' urging, Plaintiff transferred from the University of Alabama to Howard Community College ("HCC") in Maryland so that she could remain close to Defendants as she pursued nursing courses. *Id*. ¶¶ 22, 24, 25.

---

[1] For purposes of resolving the Motion to Dismiss, the court accepts as true all well-pled facts set forth in the Amended Complaint. (ECF No. 13.) *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017).

Plaintiff began taking courses at HCC and lived with her son in Defendants' house. *Id.* ¶¶ 25, 26. While Plaintiff lived with Defendants, she did not pay rent. *Id.* ¶ 27. In return for housing, Defendants required Plaintiff to clean their home, cook their meals, and babysit their children. *Id.* While Plaintiff was enrolled at HCC, Defendant Maulesh Raval paid for Plaintiff's school tuition, and Plaintiff's father-in-law reimbursed him for the payments. *Id.* ¶ 30.

In January 2009, Plaintiff's then husband, Jigar Raval, immigrated to Maryland from India on an H-1 Visa. *Id.* ¶ 34. Defendants urged Plaintiff to "switch from a student visa to a H-4 dependent visa, based on Jigar's H-1 visa." *Id.* ¶ 36. Following Jigar's arrival, Defendant Maulesh Raval refused to continue paying Plaintiff's tuition. *Id.* ¶ 32. Defendants did not allow Plaintiff to contact her father-in-law about the tuition payments. *Id.* As a result, Plaintiff dropped out of HCC. *Id.* ¶ 37.

After leaving school, Plaintiff began working at a fast-food restaurant. (ECF No. 13 ¶ 37.) Defendants demanded Plaintiff give them her full monthly pay in return for living in their house. *Id.* ¶ 40. Defendant Maulesh Raval subsequently purchased a Subway restaurant franchise, and Plaintiff and Jigar began working there. *Id.* ¶¶ 41, 43. Plaintiff worked for Defendant Maulesh Raval's franchise from 2011 to 2020. *Id.* ¶¶ 49, 116. She worked seven days a week usually from 6:00 a.m. to 11:00 p.m. and, despite Defendants promises, was never paid. *Id.* ¶¶ 45–49. Defendants gave Plaintiff a cell phone but monitored her calls and texts on the phone. *Id.* ¶¶ 74–77. Defendants additionally tracked Plaintiff's movement and whereabouts. *Id.* ¶ 96. Plaintiff was isolated from the outside world. *Id.* ¶ 151.

While Plaintiff lived with Defendants, Defendants maintained control of Plaintiff's passport and personal documents, and refused Plaintiff's requests to return her passport. (ECF No. 13 ¶¶ 88–90, 106.) In February 2017, Jigar Raval and Plaintiff divorced, and Defendants' hostility

towards Plaintiff increased; when Plaintiff requested her passport and wages, Defendants threatened to deport Plaintiff thereby separating her from her son. *Id*. ¶¶ 105, 106, 108.

When Defendant Maulesh Raval's Subway franchise closed in 2020, Defendant forced Plaintiff to work as a full-time, live-in domestic servant. *Id*. ¶ 116–18. Plaintiff worked 18-hour days cooking, cleaning, and performing miscellaneous errands for Defendants without pay. *Id*. ¶ 125. Defendants continued to threaten Plaintiff with harm to her son and deportation and, in at least one instance, Defendant Rina Raval slapped Plaintiff. *Id*. ¶¶ 140–144. Plaintiff continued living with Defendants until June 2021 when Plaintiff's ex-husband's parents learned of her situation and came to the United States "to save her." *Id*. ¶ 186.

Plaintiff initiated this action on September 10, 2024. (ECF No. 1.) Defendants moved to dismiss the Complaint (ECF No. 12), and Plaintiff timely filed an Amended Complaint (ECF No. 13) rendering Defendants' first Motion to Dismiss (ECF No. 12) moot. In the Amended Complaint, Plaintiff alleges the following causes of action:

> Count I: Forced Labor in Violation of the Victims of Trafficking and Violence Protection Act of 2000 ("TVPA") (18 U.S.C. §§ 1589, 1595);
>
> Count II: Violations of the Maryland Wage and Hour Law ("MWHL") (MD. ANN. CODE, LABOR & EMPLOYMENT §§ 3-413, 3-415;
>
> Count III: Violation of the Fair Labor Standards Act ("FLSA") for work performed in Defendants' restaurant (29 U.S.C. §§ 206, 207);
>
> Count IV: Violation of the FLSA for work performed in Defendants' home;
>
> Count V: Violations of the Maryland Wage Payment and Collection Law ("MWPCL") (MD. CODE ANN., LABOR & EMPL. §§ 3-502, 3-505); and
>
> Count VI: Unjust Enrichment.

Defendants now move to dismiss Counts II, III, IV, V, and VI of the Amended Complaint. (ECF No. 14, the "Motion.") Plaintiff opposes the Motion.

## II. LEGAL STANDARD

A motion asserted under Federal Rule of Civil Procedure 12(b)(6) "test[s] the sufficiency of a complaint;" it does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). Therefore, a "Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards*, 178 F.3d at 244.

"While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnote omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "[A] complaint that provides no more than 'labels and conclusions,' or 'a formulaic recitation of the elements of a cause of action,' is insufficient." *Bourgeois v. Live Nation Ent., Inc.*, 3 F. Supp. 3d 423, 434 (D. Md. 2014) (quoting *Twombly*, 550 U.S. at 555). "The [c]ourt must be able to deduce 'more than the mere possibility of misconduct'; the facts of the complaint, accepted as true, must demonstrate that the plaintiff is entitled to relief." *Evans v. 7520 Surratts Rd. Operations,*

*LLC*, No. 8:21-CV-01637-PX, 2021 WL 5326463, at *2 (D. Md. Nov. 16, 2021) (quoting *Ruffin v. Lockheed Martin Corp.*, 126 F. Supp. 3d 521, 526 (D. Md. 2015)).

### III. ANALYSIS

#### A. Timeliness of Counts II–VI

In the Motion, Defendants seek dismissal of Counts II through VI on the grounds that they are time-barred. Plaintiff does not dispute that limitations expired before she filed the Complaint. (ECF No. 13 ¶¶ 218–220, 238, 253, 268, 282.) Instead, Plaintiff asserts she is entitled to equitable tolling. *Id*.

"A court may dismiss a complaint on statute of limitations grounds 'if the time bar is apparent on the face of the complaint.'" *Ott v. Maryland Dep't of Pub. Safety & Corr. Servs.*, 909 F.3d 655, 658 (4th Cir. 2018) (quoting *Dean v. Pilgrim's Pride Corp.*, 395 F.3d 471, 474 (4th Cir. 2005)); *see also Sanchez v. Arlington Cnty. Sch. Bd.*, 58 F.4th 130, 135 (4th Cir. 2023) (same).

Under Maryland law, "a civil action shall be filed within three years from the date it accrues." MD. CODE ANN., CTS. & JUD. PROC. § 5-101. Maryland courts apply the discovery rule, "which provides that a cause of action accrues not on the date that the wrongful act originally occurred, but rather on the date 'when the claimant in fact knew or reasonably should have known of the wrong.'" *West v. Pitman*, No. JKB-24-00333, 2025 WL 1158884, at *3 (D. Md. Apr. 21, 2025) (quoting *Poffenberger v. Risser*, 431 A.2d 677, 680 (Md. 1981)). As set forth in *Poffenberger*, the discovery rule:

> contemplates actual knowledge that is express cognition, or awareness implied from 'knowledge of circumstances which ought to have put a person of ordinary prudence on inquiry [thus, charging the individual] with notice of all facts which such an investigation would in all probability have disclosed if it had been properly pursued.'

5

*Poffenberger*, 431 A.2d at 680 (quoting *Fertitta v. Bay Shore Dev. Corp.*, 250 A.2d 69, 75 (Md. 1969)) (alterations original).

Maryland's three-year statute of limitations for civil actions applies to claims brought under the MWHL, the MWPCL, and to claims for unjust enrichment. MD. CODE ANN., CTS. & JUD. PROC. § 5-101; *see Vanegas v. Diaz Granados, Inc.*, No. PWG-15-2298, 2017 WL 345855, at *2–3 (D. Md. Jan. 24, 2017) (comparing the three-year statute of limitations for MWHL and MWPCL claims to the two-year limitations period for non-willful FLSA violations); *State Farm Mut. Auto Ins. Co. v. Slade Healthcare, Inc.*, 381 F. Supp. 3d 536, 555 (D. Md. 2019) (noting Maryland's three-year statute of limitations applies to unjust enrichment claims). The factual allegations giving rise to Plaintiff's Maryland state law claims occurred between 2007 and June 2021. (ECF No. 13 ¶ 186.) Plaintiff initiated this action on September 10, 2024. (ECF No. 1.) As set forth above, Plaintiff does not challenge that limitations technically expired as to her MWHL, MWPCL, and unjust enrichment claims; rather, Plaintiff asserts she is entitled to equitable tolling of limitations. (ECF No. 13 ¶¶ 220, 238, 282.)

The statute of limitations for FLSA claims is two years except where the defendant's violation was "willful," in which case the limitations period is extended to three years. 29 U.S.C. § 255(a). A defendant's violation is willful if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). At the pleading stage, a plaintiff may generally allege willfulness. *Hobson v. Loc. 689, Amalgamated Transit Union AFL-CIO*, No. CV TDC-21-2374, 2022 WL 3028073, at *3 (D. Md. Aug. 1, 2022) (providing that "[a]t the pleading stage, a plaintiff need not allege willfulness with specificity.") (quoting *Rivera v. Peri & Sons Farms. Inc.*, 735 F.3d 892, 902–03 (9th Cir. 2013)); *Rose v. Harloe Mgmt. Corp.*, No. CV GLR-16-761, 2017

WL 193295, at *4 (D. Md. Jan. 17, 2017) (explaining that plaintiff did "not need to allege specific facts that defendants willfully violated the FLSA" to survive a motion to dismiss).

Here, Plaintiff alleges that Defendants violated the provisions of the FLSA "in a willful and intentional manner." (ECF No. 13 ¶¶ 228, 245.) Defendants argue this conclusory categorization is insufficient to plead willfulness and, regardless, Plaintiff brings her claims more than three years after the alleged violations. In seeming recognition that she filed the Complaint outside even the longer willful-violations limitations period, Plaintiff repeatedly alleges that "the facts of this case justify tolling the statute of limitations." *See, e.g., Id*. ¶ 238.

"Equitable tolling is appropriate in two circumstances: first, when 'the plaintiffs were prevented from asserting their claims by some kind of wrongful conduct on the part of the defendant,' and second, when 'extraordinary circumstances beyond plaintiffs' control made it impossible to file the claims on time.'" *Cruz v. Maypa*, 773 F.3d 138, 145 (4th Cir. 2014) (quoting *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000)). Equitable tolling is a "rare remedy available only where the plaintiff has 'exercise[d] due diligence in preserving [his or her] rights.'" *Id*. at 145–46 (quoting *Chao v. Va. Dep't of Transp.*, 291 F.3d 276, 283 (4th Cir. 2002)); *see Harris*, 209 F.3d at 330 (considering the equitable tolling doctrine and noting "that any resort to equity must be reserved for those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result."). Importantly, "[e]quitable tolling is not appropriate ... 'where the claimant failed to exercise due diligence in preserving his legal rights.'" *Chao*, 291 F.3d at 283 (quoting *Irwin v. Dep't of Veterans*, 498 U.S. 89, 96 (1990)).

Upon consideration of facts similar to those alleged here, the Fourth Circuit found that extraordinary circumstances justified tolling where a plaintiff "alleged that the defendants

confiscated her passport, isolated her from other people, monitored her communications, and threatened that she would be imprisoned and deported if she tried to escape. . . . . [T]his virtual imprisonment prevented her from seeking legal redress until at least the date of her escape[.]" *Cruz*, 773 F.3d at 146. Here, Plaintiff makes these same allegations: Defendants possessed her passport and her son's personal identification documents, and refused to give them to her (ECF No. 13 ¶¶ 88–90); Defendants isolated her (*id.* ¶ 92); Defendants monitored all communications on her cellphone (*id.* ¶¶ 75–77), as well as her physical location and movements (*id.* ¶ 96); and Defendants threatened to separate her from her son by deporting her if she stopped working for them (*id.* ¶ 106). Plaintiff has thus alleged extraordinary circumstances justifying tolling the limitations period until the date of her alleged escape in June 2021. (*Id.* ¶ 186.) This tolling, however, does not alone salvage Plaintiff's Complaint, as she filed this action on September 10, 2024, over three years after June 2021.

Importantly, in the Fourth Circuit, where an employer fails to post statutory notice of workers' rights under the FLSA, the employee's FLSA claim may be equitably tolled until the date she learns of her FLSA rights or retains an attorney. *Cruz*, 773 F.3d at 146–47; *see Mata v. G.O. Contractors Group, Ltd.*, No. TDC-14-3287, 2015 WL 6674650, at *4 n.1 (D. Md. Oct. 29, 2015) (holding that the statute of limitations may be equitably tolled where "a defendant fails to post signs advising employees of their wage rights" and the plaintiffs alleged they "did not see any signs in the workplace advising employees of their right to overtime pay"); *Delcid v. Isabella*, No. MJM-20-3167, 2022 WL 17342048, at *2 (D. Md. Nov. 30, 2022) (same).

In *Cruz*, the Fourth Circuit reversed the district court's dismissal of the complaint as "[t]he current factual record, which is limited to the amended complaint, does not identify when Cruz first retained a lawyer or learned of her rights under the FLSA," and remanded to "allow discovery

8

… to determine in the first instance whether Cruz's FLSA claim was time barred despite being equitably tolled." *Cruz*, 773 F.3d at 147.  This court has also declined to enter summary judgment on the basis that MWHL and MWPCL claims are time-barred where "[t]he record is not sufficiently developed on whether and when [plaintiff] learned of his legal right to overtime pay[.]" *Guerra v. Teixeira*, No. CV TDC-16-0618, 2018 WL 3756716, at *7 (D. Md. Aug. 8, 2018).

Plaintiff alleges "Defendants did not have any posters in the Restaurant or at their home informing [Plaintiff] about her rights, including her rights to a minimum wage and overtime pay." (ECF No. 13 ¶ 87.)  Plaintiff does not allege when she retained counsel or otherwise learned of her rights under the FLSA, and insists she is entitled to discovery "to prove that equitable tolling applies." (ECF No. 17 at p. 14.)  Defendants do not address Plaintiff's citation of *Cruz* or cite cases specific to FLSA notice-based tolling; they present no argument that notice-based tolling does not apply here.  In reply to Plaintiff's opposition memorandum, Defendants protest discovery of a fact known to Plaintiff – "Plaintiff refuses to answer the dispositive question her own equitable estoppel argument begs: What did Plaintiff do for these three years to pursue her rights?"  (ECF No. 18 at p. 4.)  Statute of limitations defenses are the defendant's, not the plaintiff's, burden to plead. *Hobson*, 2022 WL 3028073, at *3.  Plaintiff has alleged Defendants failed to provide notice and has not pled when, in fact, she learned Defendants alleged conduct violated the FLSA.  Thus, on the face of the complaint, it is not clear that Plaintiff's claims are time-barred and dismissal on such grounds is inappropriate at this juncture.

### B. Sufficiency of FLSA Claims (Counts III and IV)

Defendants next argue that Plaintiff's FLSA claims must be dismissed as she has not adequately pled enterprise coverage or individual coverage as required by statute.  29 U.S.C. §§ 207(a)(1), 203(s)(3).

9

> The FLSA requires employers to pay covered employees overtime if they work more than 40 hours in a workweek. 29 U.S.C. § 207(a)(1) (2012). A covered employee is one who either "is engaged in commerce or in the production of goods for commerce" (known as "individual coverage") or is employed in "an enterprise engaged in commerce or in the production of goods for commerce" (known as "enterprise coverage"). *Id.*
>
> With respect to individual coverage, an employee "engaged in commerce" is one who is "in the channels of interstate commerce," as opposed to merely affecting commerce. *McLeod v. Threlkeld*, 319 U.S. 491, 494, 63 S.Ct. 1248, 87 L.Ed. 1538 (1943). "The test is whether the work is so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated local activity." *Mitchell v. C.W. Vollmer & Co.*, 349 U.S. 427, 429, 75 S.Ct. 860, 99 L.Ed. 1196 (1955).
>
> …
>
> Turning next to enterprise coverage, an enterprise is "engaged in commerce or in the production of goods for commerce" when it both has at least $500,000 in annual sales and "has employees engaged in commerce or in the production of goods for commerce" or "has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person." § 203(s)(1)(A)(i)–(ii).

*Ergashov v. Glob. Dynamic Transportation, LLC*, 680 F. App'x 161, 162–63 (4th Cir. 2017).

In support of their claim that Plaintiff fails to adequately plead either form of coverage, Defendants cite to just one case – *Ergashov* – where the Fourth Circuit determined allegations of merely delivering donuts to a national franchise, not working for same, did not establish coverage. *Id*. In contrast, here, Plaintiff alleges she worked at a Subway franchise with at least $500,000 in annual revenue (ECF No. 13 ¶ 65) and that, in her capacity as an employee, she handled or otherwise worked with goods and materials moved in interstate commerce. (*Id*. ¶¶ 57, 58, 50, 61.) *See Helfand v. W.P.I.P., Inc.*, 165 F. Supp. 3d 392, 397 (D. Md. 2016) (accepting plaintiff's single allegation that the defendant's "'annual dollar volume of business' exceeds $500,000" as true and sufficient to deny a motion to dismiss); *Diaz v. HBT, Inc.*, No. RWT 11CV1856, 2012 WL 294749,

10

at *4 (D. Md. Jan. 31, 2012) (noting "[i]t is difficult to imagine a defendant employer in the twenty-first century that does not have employees who handle, sell, or otherwise work on goods or materials that have moved in or have been produced for commerce by any person.").

To the extent Defendants additionally contest the sufficiency of Plaintiff's MWHL claim, the MWHL is the "state parallel" of the FLSA, *Mould v. NJG Food Serv.*, 37 F. Supp. 3d 762, 774 (D. Md. 2014), and claims under the MWHL "stand[] or fall[]" on the success of claims under the FLSA. *Turner v. Human Genome Scis., Inc.*, 292 F. Supp. 2d 738, 744 (D. Md. 2003). Thus, for the reasons articulated in relation to the FLSA claims, dismissal of Plaintiff's MWHL claim is not appropriate.

### C. Preemption of Unjust Enrichment Claim (Count VI)

Defendants aver that even if not time-barred, Plaintiff's unjust enrichment claim is preempted by her FLSA claims and thus must be dismissed. Plaintiff insists that her unjust enrichment claim is based on factual allegations distinct from, and not preempted by, her FLSA claims.

To accomplish its purpose of eliminating "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers," the FLSA mandates that covered workers be paid a minimum wage and receive overtime compensation. 29 U.S.C. §§ 202(a), 206, 207; *Anderson v. Sara Lee Corp*, 508 F.3d 181, 193–94 (4th Cir. 2007). "The Fourth Circuit has recognized that 'Congress prescribed exclusive remedies in the FLSA for violations of its mandates,' such that state common law claims based on a violation of overtime pay requirements are preempted if they 'depend on establishing that [the defendant] violated the FLSA' and 'essentially require the same proof as claims asserted under the FLSA itself.'" *Hobson v. Loc. 689, Amalgamated Transit Union AFL-CIO*, No. CV TDC-21-2374, 2022

11

WL 3028073, at *5 (D. Md. Aug. 1, 2022) (quoting *Anderson*, 508 F.3d at 193–94). The FLSA does not, however, pose a bar to a plaintiff's unjust enrichment claim based on allegations of a failure to pay wages not mandated by the Act. For example, this court found the FLSA does not preempt an unjust enrichment claim based on failure to pay a promised wage increase. *Id.*

Defendants aver Plaintiff's unjust enrichment claim is preempted because the damages she seeks to reclaim under same is "the very payment she alleges are unpaid wages." (ECF No. 14-1 at p. 6.) Plaintiff counters that her unjust enrichment claim arises from allegations that Defendants promised to pay her, did not do so, and then lied that they did not have to pay her. Plaintiff does not allege, in support of her unjust enrichment claim, that Defendants failed to pay her for overtime work or paid her less than the statutory required minimum wage. Drawing all inferences in Plaintiff's favor, it is plausible that Defendants were unjustly enriched because they obtained Plaintiff's labor for no payment by promising to pay her and, alternatively, threatening to deport her. These factual allegations are distinct from those alleged to support her FLSA claims. *See McClain v. Cape Air*, No. 22-CV-10649-DJC, 2023 WL 3587284, at *13 (D. Mass. May 22, 2023) (denying motion to dismiss unjust enrichment claim upon finding that it did not merely duplicate FLSA minimum wage claims); *DeSilva v. N. Shore-Long Island Jewish Health Sys.*, 770 F. Supp. 2d 497, 533 (E.D.N.Y. 2011) (explaining "because plaintiffs' common law claims seeking 'straight time' pay are not duplicative of their FLSA claims, they are not preempted by the FLSA and should not be dismissed on this ground."). Accordingly, Plaintiff's unjust enrichment claim will not be dismissed on grounds of preemption.

**IV.   CONCLUSION**

For the reasons set forth herein, by separate order, the Motions to Dismiss (ECF Nos. 12, 14) shall be denied.

/S/

Date: July 7, 2025                                      _____

Julie R. Rubin
United States District Judge